IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

PEGGY DIANE VAUGHN,

    Plaintiff,

vs.                                          CASE NO. CV-00-J-1365-NW

FLORENCE CITY BOARD OF
EDUCATION, et al.,

    Defendants.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion to dismiss plaintiff's amended complaint (doc. 14), to which the plaintiff has responded and filed deposition excerpts in support of her response and opposition. The court finds that the submission of the plaintiff's deposition in opposition to the defendants' motion to dismiss requires this court to treat this as a motion for summary judgment under Rule 12(b), Federal Rules of Civil Procedure. Because this court has determined that the pending motion is to be considered as a motion for summary judgment, the court most consider all the evidence in the light most favorable to the plaintiff.

### Procedural History

Plaintiff commenced this action on May 22, 2000 by filing a complaint listing causes of action under 28 U.S.C. § 2201; 29 U.S.C. §§ 621, *et seq.*;[1] 42 U.S.C. § 1983 and state law claims. By amended complaint filed September 14, 2000, the plaintiff added an additional

---

[1] The plaintiff incorrectly designated this statute in her original complaint and amended the same to reflect the correct statute for suit under the Age Discrimination in Employment Act. Plaintiff's first amendment to the complaint at 2.

party as well as stated additional claims for age discrimination under 29 U.S.C. §§ 621, *et seq.*; an additional claim under 42 U.S.C. §§ 2000e, *et seq.*; violation of state and federal constitutional rights; and additional state law claims.

## Factual Background

The plaintiff, a forty-eight year old white female, alleges that after serving as a library clerk with the defendant Florence City Board of Education (the "Board") for over twenty years, she was denied the opportunity to apply for a vacancy for secretary at a different school within the school system due to the defendant superintendent's decision not to post the position. Complaint at ¶¶ 27, 29-30; plaintiff's deposition at 21. Plaintiff alleges such position would have been a promotion for her. Complaint at ¶¶ 28, 32. She further alleges that a younger, less-qualified female was awarded the position. *Id.* at ¶ 34; plaintiff depo. at 70. The plaintiff asserts that she was qualified for the position, having performed secretarial duties for the past twenty years. Plaintiff depo. at 26. The plaintiff stated in her deposition that:

> My complaint is that in my very first encounter with Dr. Barney on May 21 [1999].... As soon as I walked into Dr. Barney's office, he asked me if I was there for maternity leave. That was very offensive to me. I think it was done in a manner to set the tone for that entire meeting.[2]
>
> In that meeting, I went to Dr. Barney in good faith. I realize he does not have to approve of what my endeavor is....
>
> And in that meeting, I asked him about the vacancy at Bradshaw being posted, and he told me that his back was against the wall and he had no choice. At the end of the meeting, he told me that the job did not have to be posted, it would

---

[2]The plaintiff testified that she found this comment offensive, but that she smiled when he stated it and then attributed the comment to her status as a library clerk, a female, and a mature employee. Plaintiff depo. at 54.

> not be posted, and for me to take any measures that I felt I needed to take. Since then, it has come to my knowledge that the job should be posted.
>
> In the letter for Dr. Barney after that meeting, he also quoted an attorney general's opinion. I have searched high and low for such an opinion. That was, in my opinion, a deliberate attempt on Dr. Barney's part to hinder me from applying for this job and ultimately getting this job.
>
> ... It has been brought to my attention several times by people of Dr. Barney's reputation of favoring males in the system. I truly did not want to believe that, and until I encountered it personally, I did not believe it.

*Id.* at 48-49.

The plaintiff also alleges the state salary schedules are discriminatory because clerical and maintenance employees' years of service are calculated differently, and "maintenance" is a male classification, whereas "clerical" is a female classification. *Id.* at 60-61. She further states that the "Board and Dr. Barney violated all of my rights by state law and School Board policy, that as a mature female in this system, they did not look at the facts and the laws and the policies .... Dr. Barney chose ... to place a younger, less experienced employee in a position for which I was qualified, and I would have ultimately have had that position." *Id.* at 64-65.

The plaintiff filed a grievance with the defendant Board on May 27, 1999, which was resolved by a vote of the Board on September 3, 1999 that the superintendent did not have to post the position vacancy. Complaint at ¶¶ 36, 38, 40, 45. Plaintiff alleges these actions were discriminatory against her because she is a "mature female." *Id.* at ¶¶ 41-42. Plaintiff filed an EEOC charge on February 11, 2000, which was dismissed as untimely due to its filing more than 180 days after the allegedly discriminatory act. *See* Exhibit A to plaintiff's

3

complaint, March 2, 2000 letter from the EEOC. The plaintiff's amended complaint did not add to or alter the plaintiff's statement of facts in her original complaint.

As to the timeliness issue of the plaintiff's EEOC complaint, the court notes that the plaintiff states she was told at her May 21, 1999 meeting with Dr. Barney the position would not be posted. She further states she received a letter from Dr. Barney on May 26, 1999, stating in part that Attorney General opinions supported his not posting the position; that Dr. Barney had already chosen a younger, less experienced female; and that she had a Level II grievance hearing scheduled for June 1, 1999. Plaintiff depo. at 68, 70-71. The plaintiff states the Board had already, at that point, chosen Dion Johnson to fill the position in question.[3] *Id.* at 71. After receiving a certified letter from the Board on June 11, 1999, stating that her grievance was denied she requested her Level III hearing. *Id.* at 72, 107.

The defendants allege the plaintiff's charge of discrimination was filed with the Equal Employment Opportunity Commission more than 180 days after the last date of discrimination and is thus barred as untimely. *See* 42 U.S.C. § 2000e-5(e); defendants' answer to complaint (doc. 4) at 1-2, defendants' motion to dismiss at 4-5.

**Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[3]This conflicts with her statement that she left the June 1 meeting thinking this was still undecided. Plaintiff depo. at 71. She states that the all personnel changes were made at the May board meeting, but she believed the decision to place Dion Johnson in the position she wanted was not final because of her pending grievance. Plaintiff's depo. at 98-99.

4

moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coates & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). "The moving party is entitled to judgment as a matter of law if the nonmoving party cannot sufficiently show an essential element of the case to which the nonmoving party has the burden of proof." *Cornelius v. Town of Highland Lake,* 880 F.2d 348, 351 (11th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). Summary judgment is appropriate where the moving party shows an absence of evidence to support an essential element of the nonmoving party's case. *Weiss v. School Board of Hillsborough County*, 141 F.3d 990, 994 (11th Cir. 1998).

## LEGAL ANALYSIS

The plaintiff alleges the discrimination against her continued until September 3, 1999, the date her Level III grievance was denied. Plaintiff's response and opposition at 6. The plaintiff argues that until September 3, 1999, she had "no ruling from the decision making authority ... from which to file charge (sic) of unlawful discrimination with the EEOC." *Id.* However, the plaintiff admits she was aware a younger female was selected to fill the

5

position in question at least by June 1, 1999. Plaintiff depo. at 68-71. Hence, the court finds the plaintiff was on notice of any alleged discrimination well before September 3, 1999.

The defendants allege the plaintiff filed her charge of discrimination outside the 180 day time frame mandated under 42 U.S.C. § 2000e-5(e)(1). This court finds a multitude of evidence that the plaintiff was on notice of the facts she claims form the basis for her gender and age discrimination claims long before September 3, 1999. Whether a final decision had been made on posting the position is a different question from whether the position had been filled by someone outside the plaintiff's protected sex and age group status.[4]

This court finds the plaintiff's EEOC charge of February 11, 2000 was untimely as to all alleged discriminatory acts. *See e.g. Burnham v. Amoco Container Co.*, 755 F.2d 893 (11th Cir.1985). The 180-day time limit to file an EEOC charge is a statute of limitations to filing a lawsuit based on discrimination and the allegations of that charge. 42 U.S.C. § 2000e-5(e)(1). The language of that code section is mandatory, stating that a "charge under this section **shall** be filed within one hundred and eighty days after the alleged unlawful employment practice occurred.... (emphasis added)." However, courts have interpreted this language to find that the 180 days is not jurisdictional and is subject to waiver, estoppel and equitable tolling. *Burnham v. Amoco Container Company*, 755 F.2d 893, 894 (11th Cir. 1985) (addressing 180 day charge filing requirement under the ADEA); citing *Zipes v. TransWorld Airlines, Inc.*, 455 U.S. 385, 395 n. 11, 102 S.Ct. 1127, 1133 n.11, 71 L.Ed.2d

---

[4]The court also notes that the plaintiff would be unable to establish a claim for gender discrimination under Title VII because the position in question was filled by a female. However, the court does not reach this issue for reasons set forth in this opinion.

234 (1982); *Allison v. Western Union Telegraph Co.*, 680 F.2d 1318, 1323 (11th Cir.1982) (EEOC filing requirement under Title VII, like that under ADEA, is not jurisdictional).

However, the plaintiff here failed to establish or even raise any equitable considerations which would toll the 180 day requirement of 42 U.S.C. § 2000e-5(e)(1).[5] Thus, counting 180 days backward from February 11, 2000, this court finds that any claims which arose before August 11, 1999 are barred. This court finds that because plaintiff had all the information necessary to determine she would not receive the promotion, and all the factual information she needed to determine whether she believed she was the victim of discrimination by June 1, 1999, the court finds the Title VII and ADEA claims are due to be dismissed. The decision to fill the position with a younger female, assuming the plaintiff could establish this was a gender or age discrimination practice, and not the final denial of the plaintiff's grievance, constitutes the "alleged unlawful practice" that triggers the filing period for an EEOC charge under 42 U.S.C. § 2000e-5(e)(1). *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d. 431 (1980). Thus, the 180 day period is counted from the date the plaintiff received notice that she could not apply for the position, May 21, 1999.[6] The plaintiff has alleged no grounds for this court to find she was unaware

---

[5] *Cf. Cocke v. Merrill Lynch*, 817 F.2d 1559, 1561-1562 (11th Cir.1987) (stating that the180-day period is counted from the date the employee receives notice of the adverse action). In *Cocke*, the Court vacated and remanded the case to the District Court because the plaintiff was led to believe the employer was trying to place him in another job, thus justifying the application of equitable tolling. In contrast, the plaintiff here was told in May, 1999 she would not receive the job she wanted.

[6] This court has, in the light most favorable to the plaintiff, used June 1, 1999 as the date she knew of the alleged discrimination because of the plaintiff's deposition testimony that she left the June 1, 1999 meeting "thinking this was still undecided. They had already, at the May 24th board meeting, in a blanket vote, voted on all of the personnel matters, and Dion Johnson had already been chosen to be put into that slot at Bradshaw High School." Plaintiff depo. at 71.

7

of her belief that this was a discriminatory action until after August 11, 1999, the furthest back in time from the date of the February, 2000 EEOC charge this court will examine.

The board's decision on September 3, 1999 that it and/or the superintendent acted properly in filling the position without posting it did not create a new or continuing act of discrimination. An employer's refusal to undo a prior discriminatory act is not, in itself, a new act of discrimination. *Everett v. Cobb County School Dist.*, 138 F.3d 1407 (11th Cir.1998), citing *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir.1992). Claims of discrimination accrue when the plaintiff is informed of the discriminatory act. *Everett*, 138 F.3d at 1410; citing *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (period commenced at time the ... decision was made and communicated to the plaintiff, even though one of the effects of [the decision], the eventual loss of [employment], did not occur until later).

While the plaintiff argues the allegedly discriminatory acts continued until February 11, 2000, the date she filed her EEOC charge, this court can find no allegation in support of this argument.[7] *See* plaintiff's opposition at 10. The 180-day limitations period to file an EEOC charge began to run at the point when the allegedly discriminatory act, the failure to allow her to apply for the position occurred, not at the point the plaintiff's grievance process was completed. *See Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir. 1993)

---

*See also* plaintiff depo. at 97, 98-99. Because the court is unable to tell whether the plaintiff learned at the June 1 meeting that the position had been filled, or had this information beforehand, the court finds, in the light most favorable to the plaintiff, she knew by June 1, 1999 that the position had been filled by a younger female.

[7]The plaintiff also argues that the latest instance of discrimination took place on September 3, 1999. Plaintiff's response and opposition   10.

8

("Title VII's period for filing a timely charge of discrimination with the EEOC 'did not begin to run ... until the facts that would support a charge of discrimination under Title VII were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff.'"); citing *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir.1975); *Fronduti v. Trinity Industries*, 928 F.Supp. 1107 (M.D.Ala. 1996). "The discriminatory act for the purposes of limitations is the notice to the employee of an adverse employment decision, not the later execution of that decision." *Fronduti*, 928 F.Supp. at 1110, citing *Chardon v. Fernandez*, 454 U.S. 6, 8-9, 102 S.Ct. 28, 29-30, 70 L.Ed.2d 6 (1981).

The actual September, 1999 decision only confirmed what the plaintiff already knew, that the position would not be posted and had been filled by a younger female. The plaintiff's allegations, in the light most favorable to her, support that the plaintiff knew by May 27, 1999 she was not going to be given the position, otherwise she would not have filed a grievance at that time. This court finds that the Board's denial of her Level II grievance was not, in itself, a discrete discriminatory action from which the plaintiff could file an EEOC charge.

This court can determine no basis to excuse the plaintiff from filing a timely EEOC charge. As such, this court finds that the plaintiff's claims for sex discrimination under Title VII and for age under the ADEA are barred due to her untimely filing of her EEOC charge. Additionally, the plaintiff's declaratory judgment action under 28 U.S.C. § 2201 is due to be dismissed as the court finds the plaintiff's EEOC charge was untimely filed.

The court has also considered the plaintiff's claim under 42 U.S.C. § 1983. The plaintiff concedes that the defendants "correctly note that, as to the 1983 claim of deprivation of rights under the Constitution or federal law, plaintiff's claims against individual defendants in their official capacities are due to be dismissed." Plaintiff's response and opposition at 11.

Additionally, the plaintiff makes no allegation that any deprivation of her rights was pursuant to a custom or policy. As such, this court can find no basis for the plaintiff's suit under 42 U.S.C. § 1983 to proceed against the Board itself either. *See e.g. Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991). To have a cause of action pursuant to § 1983, the plaintiff must allege that a person deprived her of a federal or constitutional right and that the person was acting under color of law. *Edwards v. Wallace Community College*, 49 F.3d 1517, 1522 (11th Cir. 1995); citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923-24, 64 L.Ed.2d 572 (1980). As a municipal entity, the school board may only be held liable for the execution of a governmental policy or custom. *See Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir.1997). In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) the Supreme Court stated that a municipality can only be liable under section 1983 where the municipality itself causes the constitutional violation at issue. Respondeat superior will not attach under section 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 384, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989).

To impose § 1983 liability on the Board, the plaintiff must show the Board had policies that were so well settled as to constitute a custom impliedly authorized by policy

makers. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991). Stated another way, the plaintiff must establish a widespread practice that "although not authorized by written law or express municipal authority, is so permanent and well settled as to constitute a custom or usage with the force of law. *St. Louis v. Propatnik*, 485 U.S. at 112, 127, 108 S.Ct. 915, 298, 99 L.Ed.2d 107 (1988); quoting *Adickes*, 398 U.S. at 167-168. *See also Depew v. City of St. Marys*, 787 F.2d 1496 (11th Cir.1986); *Jones v. City of Chicago*, 787 F.2d 200 (7th Cir.1986). The plaintiff has not met this burden. She has failed to even allege a particular policy or custom of the Board which either allowed or failed to prohibit some type of constitutional violation. At best, the plaintiff alleges the Board violated state statutes and its own policies in not meeting over the summer of 1999. This is insufficient to state a 1983 claim against the Board. As such, the court shall dismiss this count of the plaintiff's amended complaint as well.

While this court has supplemental jurisdiction over plaintiff's state law claims, the court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Because resolution of the remaining counts of the plaintiff's complaint depend on determinations of state law, those claims are best resolved by the Alabama courts. *See Baggett v. First National Bank of Gainesville*, 117 F.3d 1342, 1352-1353 (11th Cir.1997). The court notes that the plaintiff's state law claims will not be barred by the statutes of limitations in light of the tolling provisions of 28 U.S.C. § 1367(d).

**Conclusion**

This court having considered all of the evidence, memoranda, briefs and arguments of the parties and the court finding that the defendant's motion to dismiss (doc. 14) is due to be granted and that this case is due to be dismissed;

It is therefore **ORDERED** by the court that said motion be and hereby is **GRANTED** to the extent that all of the plaintiff's claims under 28 U.S.C. § 2201, 42 U.S.C. § 1983, 42 U.S.C. § 2000e and 29 U.S.C. §621are **DISMISSED WITH PREJUDICE** against all of the defendants.

The plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.

**DONE** and **ORDERED** this the ___7___ day of November, 2000.

UNITED STATES DISTRICT JUDGE
INGE P. JOHNSON